**WOODLAND TRUST, Plaintiff,**

v.

**FLOWERTREE NURSERY, et al., Defendants.**

No. 93–206 CIV–OC–10.

United States District Court, M.D. Florida, Ocala Division.

Aug. 4, 1997.

Arthur George Yeager, Arthur G. Yeager, P.A., Jacksonville, FL, Stephen D. Milbrath, Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A., Orlando, FL, for plaintiff.

---

Michael C. Addison, Law Office of Michael C. Addison, Tampa, FL, William H. Honaker, David J. Gaskey, Howard & Howard, Bloomfield Hills, MI, for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HODGES, District Judge.

This is a patent infringement action in which the Plaintiff, Woodland Trust, sues Flowertree Nursery and its President to enforce United States Patent 4,763,440. The Plaintiff seeks to recover damages equal to a reasonable royalty together with enhanced damages and attorney's fees pursuant to 35 U.S.C. § 284. The patent describes a method and a system for protecting foliage plants, including tropical ferns, from freeze damage during the winter.

The Defendants deny infringement and have counterclaimed for a declaratory judgment that the patent is invalid on several grounds.

The case was tried before me without a jury, has been argued by counsel, and is ready for decision.

### Background and Summary of Decision

Within the area of four contiguous Florida counties—Volusia, Lake, Putnam and Orange—there are a number of ferneries or farms on which tropical ferns and other foliage plants are grown for sale in the flower industry. The fern leaves are typically used in floral arrangements prepared and sold by florists to consumers.

Ferns must be protected from direct sunlight and are grown under shade trees or shadehouse structures. These structures typically consist of rows of spaced, wooden poles extending above ground to a height of approximately seven feet, connected at the top by wooden stringers or cables which support a cover of mesh fabric shade cloth. Underneath, spaced throughout the shaded area, which may cover many acres, is an irrigation system consisting of sprinkler heads placed on risers extending about three feet high or just above the growing plants.

Ferns must be protected, not only from excessive sunlight, but also from freezing temperatures. At the latitude in Florida at which most ferneries are located, freezing temperatures in the winter months are not common but do occur several times each year. One conventional method historically used by fern growers to minimize freeze damage during "hard" freezes—periods of time when the temperature is expected to fall below 32° Fahrenheit by several degrees and remain there for several hours—is to turn on the irrigation system as the ambient temperature reaches freezing so as to cover the fragile fern leaves with a thin coating of ice tending to maintain the temperature on the surface of the leaf at, or just above, 32°. This method may cause some damage to the fern, but not the massive damage that would otherwise occur.

The claims of the patent in issue here, described in general terms, contemplate the installation of additional sprinkler heads above the shade cloth covering. These elevated sprinklers are activated as the ambient temperature drops to 32° so that the water freezes in the mesh openings of the shade cloth thereby forming a protective overhead cover to hold in the heat generated below by the ground level sprinklers spraying water on the plants.

The patent was applied for on July 1, 1983 and was issued on August 16, 1988. This suit was filed on December 8, 1993, but was later stayed for over a year pending reexamination proceedings in the Patent Office. A reexamination certificate was issued May 9, 1995.

The Defendant asserts a number of defenses under Sections 102 and 103 of the Act (35 U.S.C. §§ 102 and 103), and contends that the patent is invalid. Specifically, the Defendant's primary contention is that the concept or invention taught by the claims of the patent was in public use by the owner of the Defendant and by another grower in the fern industry for a substantial period of time many years ago, and that such public use renders the patent in suit invalid under 35 U.S.C. § 102(a).

Four separate witnesses testified about such prior use—John Kaufmann, Mark Hawkins, Joseph Burke and Charles Hudson.

The Plaintiff argues that the testimony of all four should be discounted because of interest or bias, but each of them impressed me as a credible witness. Moreover, this is not a case in which the testimony of a witness is dependent upon the witness' perception and recollection of a fleeting event that occurred long ago so that the witness' account, given many years later from unaided memory, might well be tainted by bias or constitute the result of a faulty memory. On the contrary, given the nature and subject matter of their testimony, to discredit those witnesses in this case the Court would be obliged to conclude that all four were deliberate perjurers. I find no basis for so concluding and, indeed, as stated previously, I find that each of them was a credible witness and that each corroborated the other.

I further find and conclude, therefore, that the Defendant adduced clear and convincing, corroborated evidence in support of its defense under 35 U.S.C. § 102(a), and that the patent in suit is invalid for that reason. Having so concluded, it is unnecessary for the Court to decide the Defendants' other theories of patent invalidity.

### Findings of Fact

1. Historically, most fern growers in Florida have used shadehouse structures for growing fern plants. The conventional shadehouse structures include a series of spaced ground level sprinklers that are located just above the average plant height; a mesh fabric shade cloth, placed over a supporting structure of posts, to cover the fern plants and the ground-level sprinklers; and a series of irrigation lines served by at least one pump for supplying warm water from a well to the ground-level sprinklers so that water can be sprinkled through the ground-level sprinklers onto the plants for purposes of normal irrigation and, during freezes, for purposes of freeze protection.

2. The conventional method of freeze protecting fern plants grown in the conventional shadehouse structures includes sprinkling water on the plants through the ground-level sprinklers as the outside temperature approaches 32°F.

3. When the conventional method of freeze protecting fern plants from freezing is implemented, it is not unusual for ice to form directly on the fern plants when the outside temperature drops to or below freezing.

4. In the 1960's many years prior to the July 1, 1983, filing date of the application for the patent in suit, William Hawkins (the owner of Flowertree Nursery, Inc.) designed and built a system for freeze protecting fern plants at Flowertree Nursery.

5. The system designed and built by Mr. Hawkins at that time covered several acres and included the following elements: a series of spaced ground level sprinklers that were located about three feet above the ground; a mesh fabric shade cloth placed over a supporting structure of wooden posts covering the foliage plants and the ground-level sprinklers; a series of spaced, elevated sprinklers that were located above the shade cloth; and at least one pump and a series of irrigation supply lines for supplying warm water from a well to the ground-level sprinklers and to the elevated sprinklers so that water could be sprayed through the ground-level sprinklers onto the plants and through the elevated sprinklers onto the shade cloth.

6. The system built by William Hawkins was designed to protect fern plants from freezing in the following general manner: (a) sprinkling the plants with water supplied through the ground-level sprinklers; and (b) sprinkling the shade cloth with water supplied through the elevated sprinklers so as to allow the water to freeze in the openings in the shade cloth thereby forming a thin sheet of ice to hold in heat released from the water sprinkled through the ground level sprinklers under the shade cloth so as to protect the plants from freeze damage.

7. Mr. Hawkins' freeze protection system covered several acres that were in plain view to the public for several years. The system was then destroyed by a tornado and was not reconstructed (as a freeze protection system) until sometime in, or after, 1988—about the same time as the issuance of the patent in suit. Hence the claim of infringement.

8. Several witnesses testified to having personal knowledge of Mr. Hawkins' freeze protection system.

9. At least one person, J.C. Burke, another fern grower who saw Mr. Hawkins' freeze protection system, built his own system based upon what he saw at that time at Flowertree Nursery.

10. Mr. Burke visited Flowertree Nursery sometime during the mid 1960's while he was working as a pest specialist. While at Flowertree Nursery, Mr. Burke observed Mr. Hawkins' freeze protection system and inquired about how the system was used.

11. After seeing Mr. Hawkins' freeze protection system, Mr. Burke built one at his own nursery that included each of the elements of the Hawkins system described above.

12. Mr. Burke's freeze protection system was used to protect foliage plants from freezing by sprinkling the foliage plants with water supplied through the ground-level sprinklers and, as the ambient temperature approached freezing, sprinkling the shade cloth with water supplied through the elevated sprinklers to allow the water sprinkled onto the shade cloth to freeze in the openings in the shade cloth to hold in heat released from the water sprinkled through the ground level sprinklers under the shade cloth.

13. Mr. Burke's system was used sometimes by turning on the ground-level sprinklers first to wet down the plans before turning on the elevated sprinklers. The elevated sprinklers were typically turned on before the ambient temperature reached freezing, so that some of the water that was sprinkled onto the shade cloth would fall through the openings in the shade cloth. The water that fell through the openings in the shade cloth would warm the plants and elevate the temperature of the air located under the shade cloth. As the ambient temperature reached freezing, the water that was sprinkled on the shade cloth created a covering of ice to hold in the heat below.

14. The Burke system was publicly known and used in the normal course of business at his nursery for at least five years. The system was located near the driveway and parking area at his nursery, within plain view of anyone that came to his nursery.

### Conclusions of Law

1. The patent in suit (Patent No. 4,763,440) was issued on August 18, 1988. A reexamination certificate was issued on May 9, 1996, amending some of the claims and adding a new claim number 10.

2. Under the provisions of 35 U.S.C. § 102(a):

A person shall be entitled to a patent unless—

(a) the invention was known or used by others in this country ... before the invention thereof by the applicant for a patent.

3. Under the provisions of 35 U.S.C. § 102(b):

A person shall be entitled to a patent unless—

(b) the invention was ... in public use ... in this country, more than one year prior to the date of the application for patent....

4. Under the provisions of 35 U.S.C. § 282:

A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim. The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.

5. Thus, in order to establish the invalidity of a patent under § 102 of the Act, it must be shown that the "invention" was "anticipated" in the prior art by the prior knowledge or use of the invention, or by its prior public use. An invention is anticipated, under § 102, when a prior art device discloses each and every element set forth in the claim. *Verdegaal Bros., Inc. v. Union Oil Co. of California*, 814 F.2d 628, 631 (Fed. Cir.1987), *cert. denied*, 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 56 (1987); *Carella v.*

*Starlight Archery and Pro Line Co.,* 804 F.2d 135, 138 (Fed. Cir. 1986). The Defendant bears the burden of proof or the burden of persuasion, and must demonstrate not only that each of the claims is invalid, but must do so by clear and convincing evidence. *Magnivision Inc. v. Bonneau Co.,* 115 F.3d 956, 958 (Fed.Cir.1997).

■ 6. The system claims of the patent (i.e., Claims 7–9) are invalid under 35 U.S.C. § 102 as being fully "anticipated" by the freeze protection systems of William Hawkins and J.C. Burke, which constitute prior art that was known publicly for many years before the filing date of the application for the patent (i.e., July 1, 1983).

7. The Hawkins' system was installed and operational at Flowertree Nursery for more than 10 years prior to James' date of invention or filing date and explicitly included every element recited in Claims 7 and 8 of the patent.

8. Claim 7 requires a ground plot of foliage plants— the Hawkins freeze protection system was used to protect leatherleaf fern foliage plants. Claim 7 requires a series of spaced ground-level sprinklers— the Hawkins system included a series of ground-level sprinklers spaced apart and located about three feet above the ground. Claim 7 requires a covering over the ground plot and the ground-level sprinklers— the Hawkins system included a mesh fabric shade cloth placed over a supporting structure of wooden posts that covered over the fern plants and the ground-level sprinklers. Claim 7 requires a series of elevated spaced sprinklers above the covering— the Hawkins system included a series of spaced elevated sprinklers located above the mesh fabric shade cloth. Lastly, Claim 7 requires a means for sprinkling the plot with water above 32°F through the ground-level and elevated sprinklers— the Hawkins system included at least one pump and several irrigation supply lines for supplying water, which has a temperature of approximately 72°F, from a well to the ground-level sprinklers and to the elevated sprinklers so that water could be sprayed through the ground-level sprinklers onto the fern plants and through the elevated sprinklers onto the shade cloth.

9. Claim 8, which depends upon Claim 7, also requires that the covering be on the order of a 20% to 80% shade cloth—the Hawkins system included a 73% shade cloth mesh fabric covering.

10. Claim 9, which depends upon Claim 8, includes a more specific limitation on the size of the openings in the shade cloth (i.e., "not greater than about 0.25 inches in diameter"). Even though the covering used in the Hawkins system is no longer available for inspection to determine if the openings were less than 0.25 inches in diameter, Claim 9 is still anticipated by the Hawkins system. That size limitation is inherently met by the shade cloth used in the Hawkins system because it is within the range recited in Claim 8, Claim 9 simply recites one of many design choices available from shade cloths that fall within the range of Claim 8.

11. The method claims of the patent (i.e.,Claims 1–6 and 10) are invalid under 35 U.S.C. § 102 as being fully anticipated by the use of the Burke freeze protection system because it was openly and publicly used in the ordinary course of business for at least five years. Therefore, the methods claimed in the patent were "known" and "used" by others more than one year before the filing date of the original application for the patent.

12. Claims 1 through 6 and 10 are anticipated by the public use of the Burke freeze protection system in the ordinary course of business. For example, Claim 1 requires providing ground-level sprinklers—the Burke system had a series of spaced ground-level sprinklers located approximately three and one-half feet above the ground. Claim 1 requires covering the plot and the ground-level sprinklers with a covering—the Burke system included a shade cloth covering that was placed over a supporting structure to cover over the foliage plants and the ground-level sprinklers. Claim 1 requires providing elevated sprinklers located above the shade cloth. Claim 1 requires sprinkling the plot of foliage plants with water through the ground-level sprinklers—the Burke system was used to sprinkle foliage plants with water supplied through the ground-level sprinklers. Lastly, Claim 1 requires sprinkling

the covering with water through the elevated sprinklers as the ambient temperature drops to about 32°F so that the water from the elevated sprinklers freezes in the openings of the covering and holds heat released during operation of the ground-level sprinklers under the covering. The Burke system was used in a manner that included sprinkling water through the elevated sprinklers onto the shade cloth as the ambient temperature was approaching freezing so that the water sprinkled onto the shade cloth would freeze in the openings in the shade cloth and hold in heat that was released from the water sprinkled through the ground-level sprinklers under the shade cloth.

13. Claims 7 through 9 are anticipated by the Burke system because it, like the Hawkins system, included every element recited in those claims.

14. The patent in suit is invalid under 35 U.S.C. § 102. It follows that the Defendant, on its counterclaim, is entitled to a declaratory decree to that effect and to a judgment dismissing with prejudice the Plaintiff's complaint for infringement. The Clerk is directed to enter judgment accordingly, with costs to be assessed pursuant to law.

IT IS SO ORDERED.