**WOODLAND TRUST, Plaintiff–Appellant,**

v.

**FLOWERTREE NURSERY, INC. and Ivy J. Winslett, Defendants–Appellees.**

No. 97–1547.

United States Court of Appeals, Federal Circuit.

July 10, 1998.

Rehearing Denied; Suggestion for Rehearing In Banc Declined Sept. 1, 1998.

Stephen D. Milbrath, Allen, Byer, Doppelt, Milbrath, and Gilchrist, Orlando, Florida, argued for plaintiff-appellant.

David J. Gaskey, Howard & Howard Attorneys, P.C., Bloomfield Hills, Michigan, argued for plaintiff-appellees. With him on the brief was William H. Honaker.

Before NEWMAN, MICHEL, and CLEVENGER, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Woodland Trust appeals the judgment[1] of the United States District Court for the Middle District of Florida, holding United States Patent 4,763,440 (the '440 patent) invalid based on prior knowledge and use by others. Because uncorroborated oral testimony, particularly that of interested persons recalling long-past events, does not, of itself, provide the clear and convincing evidence required to invalidate a patent on this ground, the judgment is reversed.

## BACKGROUND

The '440 patent, inventor Gregory James, is assigned to Woodland Trust. The invention is a method and apparatus for protecting a plot of foliage plants from freezing, by establishing an insulating covering of ice over ground level watering. It is described as particularly applicable to ferns grown in Florida for floral use. Claim 1 is illustrative, and describes the patented method:

1. A method for protecting a ground plot of foliage plants from freezing, said method comprising the steps of:

   (a) providing ground-level sprinklers throughout said plot;

   (b) covering said plot and said ground-level sprinklers with a covering of the type having openings therein;

   (c) providing elevated sprinklers above said covering;

   (d) sprinkling said plot with water through said ground-level sprinklers; and

   (e) sprinkling said covering with water through said elevated sprinklers as the ambient temperature drops to about 32°F., whereby the water from said elevated sprinklers freezes in the openings of said covering and holds heat released during operation of said ground-level sprinklers under said covering.

The patent application was filed on July 1, 1983; the patent issued on August 16, 1988. In response to Woodland's suit for patent infringement, filed in 1993, Flowertree Nursery pled several defenses, including patent invalidity under 35 U.S.C. § 102(a), § 102(b), and § 103. Under § 102(a), Flowertree stated that the method was previously known and used by each of Joseph Burke and William Hawkins (an owner of Flowertree) in the 1960s and 1970s at their nurseries in Florida, and was then discontinued by these users in 1976 and 1978. The district court found that Hawkins' system at Flowertree was reconstructed in 1988.

Four witnesses testified in support of the defense of prior knowledge and use: Mark Hawkins, Joseph Burke, Charles Hudson, and John Kaufmann. Mark Hawkins is the son of William Hawkins; he testified that his father's system, on which he worked as a child, was destroyed by a tornado in 1978, and was not reconstructed until 1988. Joseph Burke is a nursery owner who has known William Hawkins since the 1960s; he testified that he used the same system as shown in the patent, but tore it down in 1976 and did not rebuild it. Charles Hudson is a nursery owner who had worked for Joseph Burke, and John Kaufmann is a life-long friend of William Hawkins; they testified that they observed the patented system at the Burke or Hawkins nursery, before its use was discontinued. Woodland provided con-

---

1. *Woodland Trust v. Flowertree Nursery,* 982 F.Supp. 478, 44 U.S.P.Q.2d 1943 (M.D.Fla.1997).

flicting testimony; a witness named Marcus Crosby explained that he described the patented system to William Hawkins, his employer at Flowertree in 1988, after learning about it during his prior employment with Gregory James.

The district court credited the statements of all of the Flowertree witnesses, holding that "to discredit those witnesses in this case the court would be obliged to conclude that all four were deliberate perjurers." On the basis of this testimony the district court found that the apparatus claims of the '440 patent were anticipated under 35 U.S.C. § 102(a) by the Hawkins and Burke systems "which constitute prior art that was known publicly for many years before the filing date of the application for patent," and that the method claims of the '440 patent were anticipated under § 102(a) by the Burke method which was "openly and publicly used in the ordinary course of business" such that "the methods claimed in the patent were 'known' and 'used' by others more than one year before the filing date of the original application for the patent." The district court held the patent invalid, and did not discuss other defenses raised by Flowertree.

## DISCUSSION

### A

■ 35 U.S.C. § 102(a) provides:

§ 102. **A person shall be entitled to a patent unless—**

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent. . . .

Section 102(a) establishes that a person can not patent what was already known to others. If the invention was known to or used by others in this country before the date of the patentee's invention, the later inventor has not contributed to the store of knowledge, and has no entitlement to a patent. Accordingly, in order to invalidate a patent based on prior knowledge or use, that knowledge or use must have been available to the public. *See Carella v. Starlight Archery,* 804 F.2d 135, 139, 231 U.S.P.Q. 644, 646 (Fed.Cir.

1986) (the § 102(a) language "known or used by others in this country" means knowledge or use which is accessible to the public); 35 U.S.C. § 102(a) reviser's note (1952) (noting that " 'known' has been held to mean 'publicly known' " and that "no change in the language is made at this time"); P.J. Federico, *Commentary on the New Patent Act* (1954) *reprinted in* 75 J. PAT. TRADEMARK OFF. SOC'Y 161, 178 (1993) ("interpretation [of § 102(a) ] by the courts excludes various kinds of private knowledge not known to the public"; these "narrowing interpretations are not changed"). *See also Coffin v. Ogden,* 85 U.S. (18 Wall.) 120, 124–25, 21 L.Ed. 821 (1873) (accessible hence anticipating prior use); *Gayler v. Wilder,* 51 U.S. (10 How.) 477, 497–98, 13 L.Ed. 504 (1850) (nonaccessible hence nonanticipating prior use).

Therefore, notwithstanding abandonment of the prior use—which may preclude a challenge under § 102(g)—prior knowledge or use by others may invalidate a patent under § 102(a) if the prior knowledge or use was accessible to the public. *See generally* Edward C. Walterscheid, The Ever Evolving Meaning of Prior Art (pts. 1 & 8), 64 J. PAT. OFF. SOC'Y 457, 462–64 (1982), 66 J. PAT. OFF. SOC'Y 573, 574–78 (1984) (discussing the policies implemented by the several subparts of § 102).

■ The district court also referred to the criteria of § 102(b), which establishes a one year grace period based on publication or public use or sale, after which an inventor is barred from access to the patent system. Section 102(b), unlike § 102(a), is primarily concerned with the policy that encourages an inventor to enter the patent system promptly, while recognizing a one year period of public knowledge or use or commercial exploitation before the patent application must be filed. Thus an inventor's own prior commercial use, albeit kept secret, may constitute a public use or sale under § 102(b), barring him from obtaining a patent. *See Egbert v. Lippman,* 104 U.S. 333, 336, 26 L.Ed. 755 (1881) (inventor's unobservable prior use was a "public use"); *TP Laboratories v. Professional Positioners, Inc.,* 724 F.2d 965, 972, 220 U.S.P.Q. 577, 583 (Fed.Cir. 1984) ("public use" may bar patent "if the

inventor is making commercial use of the invention under circumstances which preserve its secrecy"); 1 IRVING KAYTON, PATENT PRACTICE § 4.41 (6th ed. 1995) ("[A] secret, purposely hidden use of a patented process more than one year before an applicant's filing date precludes the issuance of the patent when it is the *applicant* who so used the claimed invention and did so to his commercial advantage.")

■ However, when an asserted prior use is not that of the applicant, § 102(b) is not a bar when that prior use or knowledge is not available to the public. *See W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1550, 220 U.S.P.Q. 303, 310 (Fed.Cir.1983) (third party secret commercial activity, more than one year before the patent application of another, is not a § 102(b) bar); KAYTON, *supra*, § 4.41 ("Where the commercially advantageous, secret use is by a *third party* and even though that use is for a period more than one year before the applicant's filing date, it cannot constitute a statutory time bar under § 102(b)."); *cf. Baxter Int'l, Inc. v. COBE Laboratories, Inc.*, 88 F.3d 1054, 1058–59, 39 U.S.P.Q.2d 1437, 1440 (Fed. Cir.1996) (third party prior use accessible to the public is a § 102(b) bar).

**B**

■ Woodland argues that the uncorroborated oral testimony of persons related to or associated with the defendant can not provide the clear and convincing evidence that precedent requires to establish prior knowledge and use, particularly in view of the many years of asserted commercial use, the passage of time after the asserted use, and the acknowledged abandonment of the system by both asserted prior users. Flowertree responds that the district court's finding of prior use turned entirely on credibility, and that the credibility assessment of the trier of fact is entitled to great respect and should not be overturned on appeal.

Although an appellate court is indeed in a poor position to assess credibility, there is a very heavy burden to be met by one challenging validity when the only evidence is the oral testimony of interested persons and their friends, particularly as to long-past events. Corroboration of oral evidence of prior invention is the general rule in patent disputes. "Throughout the history of the determination of patent rights, oral testimony by an alleged inventor asserting priority over a patentee's rights is regarded with skepticism, and as a result, such inventor testimony must be supported by some type of corroborating evidence." *Price v. Symsek*, 988 F.2d 1187, 1194, 26 U.S.P.Q.2d 1031, 1036 (Fed.Cir.1993). In assessing corroboration, this court has endorsed the following criteria, as compiled in *In re Reuter*, 670 F.2d 1015, 1021 n. 9, 210 U.S.P.Q. 249, 255 n. 9 (Cust. & Pat.App. 1981):

(1) the relationship between the corroborating witness and the alleged prior user,

(2) the time period between the event and trial,

(3) the interest of the corroborating witness in the subject matter in suit,

(4) contradiction or impeachment of the witness' testimony,

(5) the extent and details of the corroborating testimony,

(6) the witness' familiarity with the subject matter of the patented invention and the prior use,

(7) probability that a prior use could occur considering the state of the art at the time,

(8) impact of the invention on the industry, and the commercial value of its practice.

*Price*, 988 F.2d at 1195 n. 3, 26 U.S.P.Q.2d at 1037 n. 3. Such an analysis can be described as application of a "rule of reason" to the corroboration requirement. *See Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577, 38 U.S.P.Q.2d 1288, 1291 (Fed.Cir.1996) (citing *Barbed Wire Patent Case*, 143 U.S. 275, 12 S.Ct. 443, 36 L.Ed. 154 (1892) and explaining that the corroboration requirement "arose out of a concern that inventors testifying in patent infringement cases would be tempted to remember facts favorable to their case by the lure of protecting their patent or defeating another's patent").

The *Barbed Wire Patent Case* litigation concerned a patent that was granted in 1874 for a barbed wire fence. Some twenty-four witnesses appeared on behalf of the accused infringers, all testifying that they had seen the same barbed wire fence exhibited by a Mr. Morley at the Delhi county fair in 1858. Witnesses testified to various events, one to having helped Morley put up the fence, another to hitching a horse to the fence and later finding the horse's nose bloodied by the barbs, another to having received a sample of Morley barbed wire which he produced at the trial, another that a boy was thrown against the Morley fence and that scars were still visible from the barbs, and others that they were attracted to the fence and paid close attention to its construction. The patentee, in turn, presented witnesses who testified that they had attended the Delhi fair but had seen "nothing of the Morley fence," in the district court's words. The son of the witness who produced a sample of barbed wire contradicted his father's testimony. The district court deemed it extremely unlikely that all of the defendants' witnesses were lying, and held the patent invalid. *Washburn & Moen Mfg. Co. v. Beat Em All Barb–Wire Co.,* 33 F. 261 (C.C.N.D.Iowa 1888), *rev'd, Barbed Wire Patent Case,* 143 U.S. 275, 12 S.Ct. 443, 36 L.Ed. 154 (1892). The Supreme Court, reversing, discussed the unreliability of testimony as to long-past events:

> In view of the unsatisfactory character of testimony, arising from the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect them, aside from the temptation to actual perjury, courts have not only imposed upon defendants the burden of proving such devices, but have required that the proof shall be clear, satisfactory, and beyond a reasonable doubt.

143 U.S. at 284, 12 S.Ct. 443. The Court concluded that:

> Witnesses whose memories are prodded by the eagerness of interested parties to elicit testimony favorable to themselves are not usually to be depended upon for accurate information.

*Id.* The Court thus required proof of prior knowledge and use that is "clear, satisfactory, and beyond a reasonable doubt." Discussing this standard, Professor Chisum observes:

> As to the exact standard of the burden of persuasion on prior use, Justice Brown in the *Barbed Wire Patent Case* did at one point refer to proof "beyond a reasonable doubt," the extremely stringent standard of criminal law. But in later cases, the Court seemed to construe the burden as one of "clear and convincing evidence," a test used in a number of areas of patent law.

1 DONALD S. CHISUM, PATENTS § 3.05[2] at 3–86 (Rel. May 1988).

In *Eibel Process Co. v. Minnesota & Ontario Paper Co.,* 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523 (1923) the Court cited its decision in *Barbed Wire Patent Case* as standing for the requirement of "clear and satisfactory" evidence when considering the probative value of oral evidence of prior knowledge and use of a patented invention:

> The oral evidence on this point falls far short of being enough to overcome the presumption of novelty from the granting of the patent. The temptation to remember in such cases and the ease with which honest witnesses can convince themselves after many years of having had a conception at the basis of a valuable patent, are well known in this branch of law, and have properly led to a rule that evidence to prove prior discovery must be clear and satisfactory. *Barbed Wire Patent Case,* 143 U.S. 275, 284 [1892]; *Loom Co. v. Higgins,* 105 U.S. 580, 591, 26 L.Ed. 1177 [1881].

*Eibel,* 261 U.S. at 60, 43 S.Ct. 322. In that case the standard of "clear and satisfactory" evidence was held not met by the oral evidence of interested persons.

In *Radio Corp. v. Radio Engineering Laboratories,* 293 U.S. 1, 55 S.Ct. 928, 79 L.Ed. 163 (1934), the Court again discussed the issue, citing *inter alia* the *Barbed Wire Patent Case* and its criterion of "beyond a reasonable doubt." The Court explained that this was guidance, not prescription, while stressing that the burden of persuasion is

heavy on an infringer who asserts that he created and used the same invention before the patentee:

> The context suggests that in these and like phrases the courts were not defining a standard in terms of scientific accuracy or literal precision, but were offering counsel and suggestion to guide the course of judgment. Through all the verbal variances, however, there runs this common core of thought and truth, that one otherwise an infringer who assails the validity of a patent fair upon its face bears a heavy burden of persuasion, and fails unless his evidence has more than a dubious preponderance.

293 U.S. at 8, 55 S.Ct. 928. This guidance, applied to this case, reinforces the heavy burden when establishing prior public knowledge and use based on long-past events. The Supreme Court's view of human nature as well as human recollection, whether deemed cynical or realistic, retains its cogency. This view is reinforced, in modern times, by the ubiquitous paper trail of virtually all commercial activity. It is rare indeed that some physical record (*e.g.*, a written document such as notes, letters, invoices, notebooks, or a sketch or drawing or photograph showing the device, a model, or some other contemporaneous record) does not exist.

In this case, despite the asserted many years of commercial and public use, we take note of the absence of any physical record to support the oral evidence. *Cf. Eibel*, 261 U.S. at 60, 43 S.Ct. 322 ("not a single written record, letter, or specification of prior date"). The asserted prior knowledge and use by Hawkins and Burke was said to have begun approximately thirty years ago and to have continued for about a decade. Hawkins testified that his prior use was terminated in 1978, and the district court found that Hawkins' system was not reconstructed until 1988. The relationship of the witnesses and the fact that the asserted prior uses ended twenty years before the trial, and were abandoned until the defendant reportedly learned of the patentee's practices, underscore the failure of this oral evidence to provide clear and convincing evidence of prior knowledge and use. The district court did not rely on the two undated photographs, and indeed their lack of detail and clarity can not have provided documentary support.

With the guidance of precedent, whose cautions stressed the frailty of memory of things long past and the temptation to remember facts favorable to the cause of one's relative or friend, we conclude that this oral evidence, standing alone, did not provide the clear and convincing evidence necessary to invalidate a patent on the ground of prior knowledge and use under § 102(a).

The judgment of invalidity on this ground is reversed. The case is remanded for further proceedings.

No costs.

*REVERSED AND REMANDED.*