MAYER, Circuit Judge,
dissenting.
Because the record establishes by clear and convincing evidence, even after all reasonable inferences are drawn in Bennett’s favor, that Meter’s knowledge of its Splash Guard product was available to the public in this country prior to the critical date of Bennett’s invention, see Woodland Trust v. Flowertree Nursery, Inc., 148 F.3d 1368, 1370 (Fed.Cir.1998) (setting forth the standard for invalidating a patent based on public knowledge under 35 U.S.C. § 102(a)), I dissent.
In order to provide the appropriate context for this conclusion, some additional facts are necessary. To begin, Meter alleges, and Bennett does not dispute, that it attached a sketch of its device to the letters it sent to the Vermont Gas Company and the Bay State Gas Company. Indeed, the attachment is specifically referenced in the March 1992 Vermont letter: “A sketch of these devices has also been attached for your reference.” The attachment is the same drawing included in the April 1992 “Quality Communique” that Meter sent to Canadian gas companies and American Meter offices in the United States, announcing regulatory approval of its device. The “communique” describes this sketch as “an engineering drawing ... [showing] the size and location of the new Canadian Meter splash guard attached to a 1213B Domestic Regulator.” In addition to demonstrating the position and relative size of the device in a regulator, it provides a view *983 inside the device, showing the placement and relative size of the vent screen and the guard, or “baffling,” insert. Along with the molded-plastic shell or casing, the screen and the guard are the only additional elements in the device. While I agree with the trial court that questions of material fact exist as to whether this document is enabling, and therefore an invalidating printed publication under 35 U.S.C. §§ 102(a) or (b), its distribution to American and Canadian gas companies establishes that by 1994, far from attempting to keep details about its device secret, Meter was actively publicizing them.
Next, Meter alleges that during sales tours in 1992-93, it showed its device and informational literature to American gas companies in the Atlanta and Great Lakes regions. Bennett Regulator Guards, Inc. v. Canadian Meter Co., No. 1:04-CV-177, 2005 WL 1123524, at *2 (N.D.Ohio May 10, 2005). To corroborate this activity, Meter introduced a July 1992 cover letter attached to 40 samples of the device. The letter and the devices were sent by Canadian Meter’s Quality Assurance and Technical Support Manager (the employee who designed the Splash Guard product) to American Meter’s Vice President and General Manager of the North American Service Group. The American Meter employee who testified that he conducted the Great Lakes sales tours was copied on the letter. Moreover, it concluded, “[pjlease advise of future requirements and customer feedback.” While this evidence does not conclusively prove that Meter did in fact show its device to American gas companies in 1992-93, it demonstrates that Meter intended to show its product to the public, i.e., that its product was publicly available and not secret.
In the abstract, it is true that, “[o]ne can publicize that a new product exists while still keeping an enabling disclosure of the structure and function of the product secret.” Ante at 982. Here, however, corroborated testimony shows at a minimum that Meter disclosed the structure and function of its device in the United States and intended to distribute samples of its product in the United States. Plainly, its invalidating knowledge was available to the public.