EASTMAN OUTDOORS, INC., and
Eastman Holding Company,
Plaintiffs,

v.

BLACKHAWK ARROW COMPANY,
and William J. Gartland &
Associates, Defendants.

No. 03–73394.

United States District Court,
E.D. Michigan,
Southern Division.

August 3, 2004.

R. Terrance Rader (P28747), Rader, Fishman & Grauer, PLLC, Bloomfield, Hills, MI, for Plaintiffs.

Douglas W. Sprinkle (P25326), Gifford, Krass, Groh, Sprinkle, Anderson & Citkowski, P.C., Birmingham, MI, for Defendants.

### OPINION AND ORDER

FEIKENS, District Judge.

## I. INTRODUCTION

This is a patent infringement dispute between two sellers of archery arrows, brought pursuant to 35 U.S.C. §§ 271 and 281–285. In the instant motion, Defendants move for summary judgment arguing that Plaintiffs' patent is invalid because of the on-sale bar provision of 35 U.S.C. § 102(b). Defendants allege that Plaintiffs' patent is invalid on the basis of three pieces of oral testimony, allegedly corroborated by various documents.

For the reasons that follow, Defendants' Motion for Summary Judgment is DENIED.

## II. FACTUAL BACKGROUND

Plaintiff Eastman Holding Company is the holder of U.S. Patent No. 6,520,876 ("the '876 patent"), entitled "Reinforced Arrow Shaft Including Integral Fabric Sleeve, Method of Making Same, and Arrow Which is Produced Therewith." (Pls.Compl.¶ 10.) The application filing date for the '876 patent is October 10, 2000. (Pls.Compl., Ex. A, U.S.6,520,876.) The patent was issued on February 18, 2003. (Pls.Compl., Ex. A, U.S.6,520,876.) Plaintiffs' '876 patent covers the following two independent claims:

Claim (1): "An arrow, comprising:

1) a hollow tubular core;

2) a fabric sleeve covering and affixed to the core, the core and sleeve cooperating to define an arrow shaft;

3) an adhesive resin material associated with the fabric sleeve; and

4) at least one auxiliary attachment connected to said arrow shaft, said auxiliary attachment selected from the group consisting of arrow heads, fletching, and nocks."

Claim (2): "An arrow, comprising:

1) a hollow tubular core having a first end with a first diameter, and a second end opposite the first end, the second end having a second diameter which is substantially equal to the first diameter;

2) a fabric sleeve covering and affixed to the core, the core and sleeve cooperating to define an arrow shaft;

3) an adhesive resin material associated with the fabric sleeve; and

4) at least one auxiliary attachment connected to said arrow shaft, said auxiliary attachment selected from the group consisting of arrow heads, fletching, and nocks."

(Pls.Compl., Ex. A, U.S.6,520,876.)

Plaintiff Eastman Holding Company is a Michigan Corporation with its principal place of business in Flushing, Michigan. (Pls.Compl.¶2.) Plaintiff Eastman Outdoors, Inc. is a Michigan corporation with its principal place of business in Flushing, Michigan, and deals in "outdoor leisure products" including "reinforced arrows." (Pls.Compl., ¶3.) In 2003, Eastman Outdoors, Inc. allegedly acquired an exclusive license under the '876 patent from Eastman Holding Company. (Pls. Compl ¶11.)

Defendant Blackhawk Arrow Company is an Ohio-based company which manufactures and sells archery arrows under the trademark "Blackhawk." (Defs.Mt.Summ. J., 1–2.) Defendant William J. Gartland &

Associates has its principal place of business in Youngstown, Ohio, (Defs. First Amended Answer, ¶5), and functions as the "sales arm" of Defendant Blackhawk Arrow Company. (Defs. Reply Br., 2.)

On September 5, 2003, Plaintiffs filed a Complaint against Defendants alleging that the archery arrows sold by Defendants infringe the '876 patent.

On February 4, 2004, Defendants filed a Motion for Summary Judgment seeking patent invalidity and/or non-infringement and arguing that Plaintiffs' '876 patent is invalid pursuant to the on-sale bar provision of 35 U.S.C. § 102(b). Defendants contend that they sold arrows which embodied each claim of Plaintiffs' patent more than one year prior to the date of Plaintiffs' patent application. (Def.Mt.2–4.) According to Defendants, "the 'Blackhawk' arrow clearly and unequivocally falls within the scope of both claims 1 and 2 of the '876 patent." (Defs.Mt.Summ. J., 4.)

Defendants allege that they developed the "Blackhawk" arrow in June of 1999. Defendants allegedly placed a manufacturing order for 12,500 "arrows" with a third party, Innovative Hockey, on June 7, 1999. Defendants allege that they received "a few hundred of the 'Blackhawk' arrows" from Innovative Hockey in August or September of 1999. Defendants also allege that the "Blackhawk" arrow was the subject of commercial offers for sale on the following dates: August 30, 1999, to Red Rock Archery; September 12, 1999, to Matt's Archery; and, October 1, 1999, to Wild West Archery. (Defs.Mt.2–3) (citing Ex. B, Decl. Gartland, ¶5–10.)

Defendants rely on three pieces of evidence to argue that Plaintiffs' patent is invalid pursuant to the on-sale bar: (1) the Declaration and Deposition of William J. Gartland, the founder of Defendant Blackhawk and Defendant William J. Gartland

& Associates, and the developer of Defendant Blackhawk's arrow line; (2) the Declaration of Gabriel Lucero, the owner of Red Rock Archery; and (3) copies of documents including alleged purchase orders and invoices, an alleged photograph of a "Blackhawk" arrow, a check for $25,000 from B & B Archery to Innovative Hockey, a Manufacturing Agreement between ASE. Inc. d/b/a B & B Archery and Innovative Hockey, and a diagram entitled "Arrow Manufacturing Plan w/ Veil." (Defs. Reply Br.).

## III. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The court must view the evidence and any inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden on the moving party is satisfied where there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### B. On–Sale Bar—35 U.S.C. § 102(b)

■ No person is entitled to patent an "invention" that has been "on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b). The determination that a product was placed "on sale" under 35 U.S.C. § 102(b) "is a conclusion of law based on underlying findings of fact." *Lacks Industries. Inc. v. McKechnie Vehicle Components USA. Inc.,* 322 F.3d 1335, 1347 (Fed.Cir.2003).

■ Pursuant to 35 U.S.C. § 282 there is a statutory presumption of validity that requires each claim of a patent to be presumed valid. This presumption "is applicable to all of the many bases for challenging a patent's validity." *Panduit Corp. v. Dennison Manufacturing Co.,* 810 F.2d 1561, 1570 (Fed.Cir.1987). Section 282 provides that "the party asserting invalidity" bears the "burden of establishing invalidity of a patent or any claim thereof." 35 U.S.C. § 282. The party asserting invalidity must demonstrate invalidity by "clear and convincing evidence." *Therma–Tru Corp. v. Peachtree Doors Inc.,* 44 F.3d 988, 992 (Fed.Cir.1995).

■ To prove that a patent is invalid for violating the on-sale bar, a party must demonstrate by clear and convincing evidence that a product which "fully anticipated the claimed invention," *Tec Air, Inc. v. Denso Manufacturing Michigan Inc.,* 192 F.3d 1353, 1358 (Fed.Cir.1999), was the subject of a "commercial offer for sale" and "ready for patenting" more than one year before the critical date. *Pfaff v. Wells Electronics, Inc.,* 525 U.S. 55, 67, 119 S.Ct. 304, 142 L.Ed.2d 261 (1998). A "commercial offer for sale" is one "which the other party could make into a binding contract by simple acceptance (assuming consideration)." *Group One. Ltd. v. Hallmark Cards Inc.,* 254 F.3d 1041, 1048 (Fed.Cir.2001). A party may demonstrate that a product was "ready for patenting" by "proof of reduction to practice before the critical date" or "proof that prior to the critical date the inventor had prepared

drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention." *Pfaff,* 525 U.S. 55, 67, 119 S.Ct. 304, 142 L.Ed.2d 261 (1998).

In this case, the critical date for purposes of the on-sale bar is October 10, 2000, the application filing date for the '876 patent. (Pls.Compl., Ex. A, U.S.6,520,876.) To prevail on their Motion for Summary Judgment, Defendants must prove by clear and convincing evidence that: (1) Defendants' "Blackhawk" arrow "fully anticipated" the invention patented in Plaintiffs' '876 patent; (2) Defendants' arrow was the subject of a "commercial offer of sale" more than one year prior to the critical date; and (3) Defendants' arrow was "ready for patenting" more than one year prior to the critical date.

## C. Oral Testimony Offered to Prove Invalidity

■ There is a "general rule in patent cases requiring corroboration of oral testimony asserting invalidity of a patent." *Young v. Lumenis, Inc.,* 301 F.Supp.2d 765, 769 (S.D.Ohio, 2004). *See Juicy Whip, Inc. v. Orange Bang, Inc.,* 292 F.3d 728, 740 (Fed.Cir.2002) ("Historically, courts have looked with disfavor upon finding anticipation with only oral testimony."); *Finnigan Corp. v. International Trade Commission,* 180 F.3d 1354, 1366 (Fed.Cir. 1999) ("The law has long looked with disfavor upon invalidating patents on the basis of mere testimonial evidence absent other evidence that corroborates that testimony."); *Woodland Trust v. Flowertree Nursery, Inc.,* 148 F.3d 1368, 1371 (Fed. Cir.1998) ("there is a very heavy burden to be met by one challenging validity when the only evidence is the oral testimony of interested persons and their friends, particularly of long-past events.").

Oral testimony offered to invalidate a patent by either an interested or uninter-ested party must be corroborated. *See Lacks,* 322 F.3d at 1350 (noting there is "a clear requirement that such oral testimony by interested parties must be corroborated by documentary testimony."); *Finnigan,* 180 F.3d at 1367 ("the need for corroboration exists regardless whether the party testifying concerning the invalidating activity is interested in the outcome of the litigation (e.g. because that party is the accused infringer) or is uninterested but testifying on behalf of the interested party.").

Similar treatment of the testimony of both interested and uninterested witnesses makes sense because the corroboration rule arose "not with reference to the level of interest of the testifying witness, but rather because of doubt that testimonial evidence alone in the special context of proving patent invalidity can meet the clear and convincing evidentiary standard to invalidate a patent." *Finnigan,* 180 F.3d at 1368. The skepticism of oral testimony underlying the corroboration rule "is reinforced, in modern times, by the ubiquitous paper trail of virtually all commercial activity." *Woodland,* 148 F.3d at 1373. As the Federal Circuit has noted, "[i]t is rare indeed that some physical record (e.g. a written document such as notes, letters, invoices, notebooks, or a sketch or drawing or photograph showing the device, a model, or some other contemporaneous record) does not exist." *Id.*

■ In assessing the evidence put forth to corroborate oral testimony of invalidity, courts generally apply a "rule of reason" analysis. *Lacks,* 322 F.3d at 1349. Under the "rule of reason" analysis, "an evaluation of all pertinent evidence must be made so that a sound determination of the credibility of [the evidence] may be reached." *Id.* (citation omitted). In applying the "rule of reason" analysis, a court should consider such factors as: "(1)

the relationship between the corroborating witness and the alleged prior user, (2) the time period between the event and trial, (3) the interest of the corroborating witness in the subject matter of the suit, (4) contradiction or impeachment of the witness' testimony, (5) the extent and details of the corroborating testimony, (6) the witness' familiarity with the subject matter of the patented invention and the prior use, (7) probability that a prior use could occur considering the state of the art at the time, and (8) impact of the invention on the industry, and the commercial value of the practice." *Woodland,* 148 F.3d at 1371.

Documentary, physical, or circumstantial evidence may corroborate an interested party's testimony. "Documentary evidence or physical evidence that is made contemporaneously with the inventive process provides the most reliable proof that the inventor's testimony has been corroborated." *Sandt Technology, Ltd. v. Resco Metal and Plastics Corp.,* 264 F.3d 1344, 1350–51 (Fed.Cir.2001). The rule is less clear regarding the use of oral testimony of other witnesses to corroborate the oral testimony of an interested party. In *Sandt,* the Federal Circuit stated that "oral testimony of someone other than the alleged inventor may corroborate an inventor's testimony." *Sandt,* 264 F.3d at 1351. However, in the more recent case of *Lacks,* the Federal Circuit concluded that the Special Master in the case "did not err in not accepting the testimony of one witness to corroborate that of another" and held that "oral testimony by interested parties must be corroborated by *documentary* testimony." *Lacks,* 322 F.3d at 1350 (emphasis added).

### D. Evidence Before This Court

### 1. Oral Testimony of William J. Gartland

Defendants rely mainly on the Declaration and Deposition of William J. Gartland

as evidence that Defendants had on sale an arrow embodying Plaintiffs' patented invention more than one year prior to the date Plaintiffs applied for the '876 patent. (Defs. Claim Chart.) Gartland founded Defendant Blackhawk Arrow Company and also founded Defendant William J. Gartland & Associates. (Dep.Gartland, 9, 11.) Gartland currently does consulting work for William J. Gartland & Associates and Blackhawk Arrow Company. (Dep.Gartland, 10, 15.) Gartland testified in his Deposition that while at Defendant Blackhawk Arrow Company, he "developed the arrow line," and "[s]olicited manufacturers to make arrows under the Blackhawk name." (Dep.Gartland, 14, 18.)

Gartland's oral testimony, standing alone, is insufficient to invalidate Plaintiffs' patent. *See Finnigan,* 180 F.3d at 1369 (holding "corroboration is required of any witness whose testimony alone is asserted to invalidate a patent."). Moreover, it appears that Gartland is an interested party. He allegedly developed the arrow line that is the subject of the present suit. He also appears to have financial connections with both Defendant companies, although the extent of those connections is not clear from the record. As an interested party, his oral testimony must be corroborated by documentary evidence; oral testimony of another witness is insufficient to corroborate his testimony. *See Lacks,* 322 F.3d at 1350 ("oral testimony by interested parties must be corroborated by documentary testimony.").

### 2. Oral Testimony of Gabriel Lucero

Defendants also rely on the Declaration of Gabriel Lucero, the owner of Red Rock Archery, (Defs.Mt.Summ. J., Ex. C, Decl.Lucero), to corroborate Gartland's testimony. In his Declaration, Lucero al-

leges that "[i]n late August of 1999, [he], as the owner of Red Rock Archery, placed an order for twenty dozen Blackhawk arrows with Blackhawk Arrow Company." (Decl.Lucero, ¶ 2.) Lucero described the "Blackhawk" arrow as "a tubular carbon arrow with a fiberglass wrap around the outside of the arrow." (Decl.Lucero, ¶ 2.)

Under *Lacks,* Lucero's oral testimony is insufficient, standing alone, to corroborate Gartland's oral testimony. Lucero does not cite to any documentary evidence to corroborate his Declaration. Lucero's Declaration contains insufficient detail to demonstrate that the product ordered by Red Rock Archery from Defendants contained all of the claimed features of the '876 patent. Lucero mentions a "tubular" carbon arrow with a "fiberglass wrap" around the outside, but describes no other features included on the alleged "Blackhawk" arrow. Lucero's Declaration does not sufficiently corroborate Garland's testimony.

### 3. Allegedly Corroborating Documents

#### a. *Innovative Hockey Invoice—June 7, 1999*

■ Gartland alleges that on June 7, 1999 "the Blackhawk Arrow Company placed a manufacturing order for 12,500 arrows with Innovative Hockey for the initial run of the 'Blackhawk' arrow." (Decl.Gartland, ¶ 5.) Gartland also alleges that "[t]hese initial arrows included the tubular core, the fabric sleeve around the core, and had an adhesive resin material associated with the fabric sleeve" and that "[c]onventional nocks, feathers and arrow heads were also attached to the arrows." (Decl.Gartland, ¶ 5.) Defendants contend that Exhibit A, a copy of an alleged invoice from Innovative Hockey, corroborates Gartland's declaration testimony. (Def. Reply Br. 2.)

The Innovative Hockey invoice states that 12,500 items, for $2 per unit, were shipped at a total cost of $25,000. (Defs. Mt. Summ. J., Ex. A, Innovative Hockey Doc.) However, the customer listed on the invoice is "Gartland," not Defendant Blackhawk Arrow Company. The invoice makes no reference to "Blackhawk" arrows, no reference to Defendant Blackhawk Arrow Company, and contains no information as to the features of the product that Innovative Hockey allegedly agreed to manufacture. The item number is "RDRROW," and the only description of the product contained on the invoice is "R & D Arrow Development." (Ex. A, Innovative Hockey Doc.) The Innovative Hockey document contains insufficient detail to demonstrate that the product referred to in the invoice contained all of the claimed features of Plaintiffs' '876 patent, and it is insufficient to corroborate Gartland's testimony.

Furthermore, Gartland's Deposition undermines his Declaration testimony and provides evidence that the product allegedly manufactured by Innovative Hockey for Defendant did not fully embody all of the features of the Plaintiffs' patented invention. For example, in his Declaration, Gartland stated that Defendant Blackhawk received a "few hundred 'Blackhawk' arrows" from Innovative Hockey in August and September of 1999. (Decl.Gartland, ¶ 7.) However, in his Deposition, Gartland testified that Defendant had actually only received a few hundred arrow "shafts." (Dep.Gartland, 113.)

Q. The Blackhawk arrows referred to in paragraph 7 [of Gartland's Declaration] were not complete arrows; correct? They were simply at best arrow shafts produced by Innovative; correct?

A. Correct.

(Dep.Gartland, 113.) Additionally, Gartland testified in his Deposition that the "shafts" delivered by Innovative Hockey did not include nocks and inserts. (Dep.Gartland, 122.)

Q. My question is whether the shafts that Innovative would have delivered in that time frame would have included nocks and inserts?

A. No.

(Dep.Gartland, 122.) Importantly, Plaintiffs' '876 patent covers arrow shafts with "at least one auxiliary attachment...consisting of arrow heads, fletching, and nocks." (Pls.Compl., Ex. A, U.S.6,520,-876.) Gartland's contradictory Deposition testimony provides additional reason to find that the Innovative Hockey Invoice constitutes insufficient corroboration.

### b. Red Rock Archery Order—August 30, 1999

Gartland alleges that on August 30, 1999, he "was in Grand Junction, Colorado and made a sales call to Red Rock Archery." (Decl.Gartland, ¶ 10.) Gartland alleges that he "showed the Blackhawk arrow to Red Rock Archery and Red Rock Archery placed an order for twenty dozen Blackhawk arrows at that time." (Decl.Gartland, ¶ 10.) Defendants contend that Exhibit D, a copy of the alleged purchase order, corroborates Gartland's testimony. (Defs. Reply Br., 2.)

The caption of the Red Rock Archery order form reads "William J. Gartland & Associates." (Defs. Mt. Summ. J. Ex. D, Red Rock Archery Doc.) The order form makes no reference to "Blackhawk" arrows. The item number is "C4000" and the description is "C4000 carbon 55/70." The price appears to be $46 per dozen, which is markedly different than the $2 unit price listed on the Innovative Hockey invoice. Although the order form makes no reference to arrows, it contains the following notation, "deduct $12.00 for fletchings." The order form is silent as to whether the product referred to includes the claimed features of the '876 patent.

The Red Rock Archery document contains insufficient detail to demonstrate that the product referred to in the document contained all of the claimed features of the '876 patent, and it is insufficient to corroborate Gartland's testimony.

### c. Matt's Archery Order Form—September 12, 1999

Gartland alleges that on September 12, 1999, "Matt's Archery at Lebanon, New Hampshire placed an order for 24 dozen Blackhawk arrows." (Decl.Gartland, ¶ 9.) Defendants contend that Exhibit C, a copy of the alleged order form, corroborates Gartland's testimony. (Defs. Reply Br., 2.)

The caption of the Matt's Archery order form reads "William J. Gartland & Associates." (Defs. Mt. Summ. J., Ex. C, Matt's Archery Doc.) The word "Blackhawk" is printed in ink on the upper right hand corner of the order form. The item number is "C400" and the description is "carbon arrows, straight fletch, bright colors." The price appears to be $46 per dozen, but that is unclear. The order form makes no reference to the "Blackhawk" arrow. The order form is silent as to whether the product referred to includes the claimed features of the '876 patent.

The Matt's Archery order form contains insufficient detail to demonstrate that the product referred to in the order form contained all of the claimed features of the '876 patent, and it is insufficient to corroborate Gartland's testimony.

### d. JES Marketing Order Invoice—October 1, 1999

Gartland alleges that on October 1, 1999, "an order for 24 dozen 'Blackhawk' arrows

was made by JES Marketing of Tempe, Arizona, a sales agent for Blackhawk Arrow, to Wild West Archery." (Decl.Gartland, ¶ 8.) Defendants suggest that Exhibit B, a copy of the alleged order invoice from JES Marketing, corroborates Gartland's testimony. (Defs.Mt.Summ. J., 2.)

The JES Marketing form makes no reference to "Blackhawk" arrows. The only reference, ambiguous at best, to Defendant Blackhawk is the word "Blackhawk" printed in pen on the upper left-hand corner of the order form. (Defs. Mt. Summ. J., Ex. B, JES Marketing Doc.) The description of the product allegedly sold by JES Marketing to Wild West Archery is "all carbon arrows w/ inserts + nocks" in "mix colors." The unit price is $46, which is markedly different than the $2 unit price listed on the Innovative Hockey invoice. The document contains no other descriptive information.

The JES Marketing order form contains insufficient detail to demonstrate that the product referred to in the order form contained all of the claimed features of the '876 patent, and it is insufficient to corroborate Gartland's testimony.

### e. Picture of Alleged "Blackhawk" Arrow

Gartland's Declaration states that a "picture of one of the original arrow shafts for the 'Blackhawk' arrows from Innovative Hockey is attached hereto as Exhibit E." (Decl.Gartland, ¶ 11.) Exhibit E contains no authenticating information whatsoever, and is insufficient to corroborate Gartland's testimony.

### f. Check for $25,000 from "B & B Archery" to Innovative Hockey

The record contains a copy of a check for $25,000 from "B & B Archery" to Innovative Hockey. (Pls. Response Br., Ex. 5.) Gartland testified in his Deposition

that a company by the name of "ASE Inc." does business as both "Blackhawk Arrow Company" and as "B & B Archery." (Dep.Gartland, 23–24.) Though the check appears to corroborate Gartland's declaration testimony that a transaction in the amount of $25,000 occurred between "B & B Archery" (or Blackhawk Arrow Company or ASE) and Innovative Hockey, the existence of the check does not corroborate that the "Blackhawk" arrow was the subject of the transaction, nor does it corroborate that the subject of the transaction contained all of the claimed features of the '876 patent.

### g. Manufacturing Agreement Between ASE Inc. d/b/a "B & B Archery" and Innovative Hockey

The record also contains a copy of a Manufacturing Agreement between ASE Inc. d/b/a "B & B Archery" and Innovative Hockey, allegedly entered into on July 1, 1999. (Pls. Response Br., Ex. 6). The Manufacturing Agreement is evidence that Innovative Hockey and ASE Inc. entered into a manufacturing and distribution agreement for arrow "shafts" at $2.00 a piece. The specifications of the products, described in at least one place as carbon "arrows," but referred to throughout the Agreement as "shafts," are as follows:

i. Thirty two inches in length;

I. Outside diameter of 23/64 inches;

II. Grain weight of 7.5—8.0 grains per inch;

III. Weight tolerance of +/–3 grains per shaft at 32";

IV. Straightness tolerance of +/-.001 per 28" or +/-.002 at 32";

V. The exterior of each shaft will be polished with a centerless grinder;

VI. Two color artwork to be silkscreened on to each shaft. B & B

shall provide camera-ready artwork to Innovative;

VII. Shafts to be bulk packaged.

(Pls. Response Br., Ex. 6.)

The Manufacturing Agreement does not demonstrate that Defendants' alleged "Blackhawk" arrow, and not simply an arrow shaft, was the subject of a commercial offer for sale. In addition, the specifications of the product are not identical to, nor do they include all of, the claimed features of the '876 patent. For example, Gartland testified that the silk screen was to be applied to the exterior of the arrow shaft after the shaft was manufactured "as all silk screens [are], painted." (Dep.Gartland, 62.) However, the '876 patent includes as an essential feature "a fabric sleeve covering and affixed to the core" of the shaft, which in "the preferred embodiment of the invention...is formed from a patterned fabric." (Pls.Compl., Ex. A, U.S.6,520,876.) This document does not sufficiently corroborate Gartland's testimony nor Defendants' theory of invalidity.

**h.** *Diagram of "Arrow Manufacturing Plan w/ Veil"*

The record contains a diagram of an "Arrow Manufacturing Plan w/ Veil" dated June 12, 1999. (Pls. Response Br., Ex. 9.) This diagram contains no identifying description. The diagram appears to document a method for making and/or wrapping an arrow shaft. No reference is made in the diagram to any of the features claimed by the '876 patent. The diagram contains insufficient detail to corroborate Gartland's declaration testimony or to establish that Plaintiffs' '876 patent is invalid pursuant to the on-sale bar.

## IV. CONCLUSION

The documentary and oral evidence in the record is insufficient to corroborate Gartland's oral testimony. Defendants can not point to any piece of documentary testimony that establishes alone, or in conjunction with other evidence, that the "Blackhawk" arrow embodied all of the claimed features of the '876 patent more than one year prior to October 10, 2000 (the filing date of the '876 patent). Because Defendants rely on uncorroborated oral testimony, Defendants fail to carry their burden of demonstrating through clear and convincing evidence that Plaintiffs' '876 patent is invalid pursuant to the on-sale bar provision of 35 U.S.C. § 102(b).

Therefore, Defendants' Motion for Summary Judgment is DENIED.

**IT IS SO ORDERED**