NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CEATS, INC.,**
*Plaintiff-Appellant,*

v.

**CONTINENTAL AIRLINES, INC., ALASKA AIRLINES, INC., HORIZON AIR INDUSTRIES, INC., DELTA AIR LINES, INC., JETBLUE AIRWAYS CORPORATION, UNITED AIRLINES, INC., VIRGIN AMERICA, INC., US AIRWAYS, INC., TICKETMASTER, LLC, TICKETSNOW.COM, INC., AND LIVE NATION WORLDWIDE, INC.,**
*Defendants-Appellees,*

AND

**AIRTRAN AIRWAYS, INC.,**
*Defendant-Appellee.*

---

2012-1614

---

Appeal from the United States District Court for the Eastern District of Texas in No. 10-CV-0120, Chief Judge Leonard Davis.

---

Decided: April 26, 2013

---

MICHAEL S. NADEL, McDermott, Will & Emery LLP, of Washington, DC, argued for plaintiff-appellant.

MARK A. LEMLEY, Durie Tangril LLP, of San Francisco, California, argued for defendants-appellees, Continental Airlines, Inc., et al. With him on the brief were CLEMENT ROBERTS and EUGENE NOVIKOV.

J. MICHAEL HEINLEN, Thompson & Knight LLP, of Dallas, Texas, argued for defendant-appellee AirTrans Airways, Inc. With him on the brief were MAX CICCARELLI and GARY R. SORDEN.

---

Before RADER, *Chief Judge,* SCHALL, and PROST, *Circuit Judges.*

Opinion for the court filed by *Chief Judge* RADER.

Concurring-in-part and dissenting-in-part opinion filed by *Circuit Judge* SCHALL.

RADER, *Chief Judge.*

This case involves four patents: U.S. Patent Nos. 7,454,361 (the '361 patent); 7,548,866 (the '866 patent); 7,660,728 (the '728 patent); and 7,548,869 (the '869 patent). The later three patents are continuations of the '361 patent and generally claim "electronic means by which people can select the exact seat or seats they want" for events, venues, or on airplanes over the internet. *See* '361 patent, Abstract, col. 2, ll. 37–49.

In 2010, the patent-holder, CEATS, Inc., filed an infringement suit against multiple airlines and online ticket reservation companies. Ultimately, the jury found the asserted claims infringed but invalid as anticipated and

obvious. After the verdict, CEATS challenged this verdict as a matter of law and also sought a new trial. The district court denied relief. Having reviewed the record and the parties' arguments, this court affirms.

## I.

Each asserted patent involves providing information over a network about the availability of seats at an event or on a plane flight, and permitting the user to select or purchase the seats of his choice. According to the patents, information on seat availability is stored in a database. '361 patent, col. 7, ll. 10–15. The seat availability information is transmitted to a remote user's computer, resulting in the display of an interactive seat map of the venue or airplane. *Id.* at col. 7, ll. 16–23. The seat map shows available seats, allows a user to select seats, and provides "additional information in response to user interaction with the display." *Id.* at col. 8, ll. 7–8. The "user interaction is a mouse over of a seating chart." *Id.* at col. 8, ll. 10–11. In other words, when a user's mouse cursor hovers over individual seats, a text box or small separate window displays additional information such as a seat number. *See id.* at col. 6, ll. 34–39.

The patents vary somewhat. For example, the '728 patent is specifically directed to selecting seats on an airplane. '728 patent, col. 6, ll. 57–58. The '869 patent is directed to venues and recites providing ticketing information relating to "sets of individual seats." '869 patent, col. 7, l. 7. The "sets of seats" language contrasts with the "plurality of available individual seats" language in the other asserted patents. *See e.g.*, '361 patent, col. 7, l. 17–18. All four patents claim priority to the filing date of the original application that led to the '361 patent: April 22, 1999. The parties also stipulated to an invention date of May 31, 1998.

CEATS accused all defendants except TicketsNow.com of infringing the '361 and '866 patents.

CEATS accused only the airlines of infringing the '728 patent and only the ticketing companies of infringing the '869 patent.

During claim construction, CEATS argued that no construction of the term "sets" in the '869 patent was required. It stated: "A 'set' is a set. This term will be familiar to the jury and needs no further construction. A set can include one or more than one item, here a seat or more than one seat." J.A. 9694.

At trial, the defendants focused on a single prior art reference: Microsoft's Expedia 2.0 system. The Expedia 2.0 system was an online travel reservation system that permitted customers to buy plane tickets and to select their seats online. Microsoft launched the system in May 1997, and the date of release is not disputed. The core of the dispute was the functionality of the Microsoft prior art, specifically its "mouse over" element.

In proving that the publicly released Expedia 2.0 system contained the claimed functionality, the defendants presented testimony from two engineers who worked on Expedia 2.0: Mr. Broas and Mr. Lubetkin. These individuals testified that the publicly released Expedia 2.0 system contained something called "Seat Pinpointer." Seat Pinpointer was a seat map of a particular airplane with the ability to select specific seats. These engineers testified that Seat Pinpointer had mouse over functionality upon release in May 1997.

The defendants also presented testimony from two Continental Airlines employees. Continental licensed the Expedia 2.0 system from Microsoft as a "white-label" product in mid-1997. "White-label" products are versions sold without branding so the purchasing entity can brand the product itself. Continental branded its version of the Expedia 2.0 system as the "CO.O.L Travel Assistant." The Continental employees testified that the system

Continental purchased contained the Seat Pinpointer feature and the mouse over functionality.

The defendants also presented physical evidence including the Expedia 2.0 test specification, a testing checklist, and videos from a Microsoft "usability study." In usability studies, a non-Microsoft employee would use the software in a controlled environment. The interaction was videotaped and recorded as part of Microsoft's regular business practice.

Lastly, the defendants presented expert testimony linking this evidence to each claim limitation. The expert concluded that the asserted claims were anticipated by the Expedia 2.0 system.

At the close of trial, the jury found the defendants infringed all the asserted claims. However, the jury also concluded that all the asserted claims were invalid as both anticipated and obvious. CEATS timely moved for judgment as a matter of law of non-invalidity or, alternatively, a new trial. The trial court denied CEATS' post-trial motions in toto. The court entered final judgment, and this appeal followed. This court has jurisdiction under 28 U.S.C. § 1295(a)(1).

## II.

CEATS raises a two-pronged challenge. First, it claims that the jury's invalidity verdict is not supported by substantial evidence. Specifically, CEATS argues that the evidence of invalidity was not sufficiently corroborated, and that the record contains no evidence showing invalidity of the "sets of seats" limitation. Second, CEATS claims the trial court gave an erroneous jury instruction on anticipation.

This court reviews the trial court's JMOL decision under regional circuit law. *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1323–24 (Fed. Cir. 2008). The jury's decision on invalidity may only be overturned "if the

evidence points so strongly and overwhelmingly" in favor of CEATS that "no reasonable juror could return a contrary verdict." *Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 296 (5th Cir. 2005). A jury may draw reasonable inferences from the evidence, and this court must view the evidence (and any reasonable inferences) in the light most favorable to the jury's determination. *Hiltgen v. Sumrall*, 47 F.3d 695, 700 (5th Cir. 1995).

The Fifth Circuit will reverse the denial of a motion for a new trial if the district court abused its discretion or misapprehended the law. *Poly-American, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1307 (Fed. Cir. 2004). A jury verdict can only be set aside if a party can establish that: "(1) it made a proper and timely objection to the jury instructions, (2) those instructions were legally erroneous, (3) the errors had prejudicial effect, and (4) it requested alternative instructions that would have remedied the error." *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1281 (Fed. Cir. 2000) (citations omitted).

## III.

### A.

Under the *Barbed-Wire* doctrine, "corroboration is required of any witness whose testimony alone is asserted to invalidate a patent." *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1159 (Fed. Cir. 2004). The requirement "arose out of a concern that inventors testifying in patent infringement cases would be tempted to remember facts favorable to their case by the lure of protecting their patent or defeating another's patent." *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577 (Fed. Cir. 1996); *see also Washburn & Moen Mfg. Co. v. Beat 'Em All Barbed-Wire Co.*, 143 U.S. 275, 284 (1892) (noting that testimony regarding invalidity can be "unsatisfactory" given "the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party

calling them would have them recollect them"). This court has since expanded this doctrine to require corroboration of invalidity regardless of the witness's level of interest. *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1369 (Fed. Cir. 1999).

This court also measures the sufficiency of corroborating evidence under a "rule of reason." *See Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1371 (Fed. Cir. 1998). Courts consider a variety of factors including: (1) the relationship between the corroborating witness and the alleged prior user; (2) the time period between the event and trial; (3) the interest of the corroborating witness in the subject matter in suit; (4) the record's showing of contradiction or impeachment of the witness's testimony; (5) the extent and details of the corroborating testimony; (6) the witness's familiarity with the subject matter of the patented invention and the prior use; (7) the probability that a prior use could occur considering the state of the art at the time; and (8) the impact of the invention on the industry and the commercial value of its practice. *Id.*

Here, the defendants presented two key fact witnesses on invalidity and corroborated their testimony with contemporaneous documents and videos. The first witness, Mr. Broas, began working as a software engineer for Expedia when it was part of Microsoft. Expedia is now a separate company, and Mr. Broas is its eCommerce Director. He testified that the Expedia 2.0 system had "Seat Pinpointer," which showed the internals of an airplane, and allowed users to select specific seats with their mouse. He stated "mouse-over" capability was part of the publicly released version of Expedia 2.0, meaning users could hold the cursor over a seat, and they would get "a little bubble-text or a tooltip that would have the seat number in it." J.A. 891.

The second witness was Mr. Lubetkin, a software engineer who wrote much of the code for the Seat Pinpointer functionality in Expedia 2.0. He testified that the system, as publicly released, contained mouse over functionality: "It would pop up the number of the seat and the word 'available;' or if you had already selected a traveler for that seat, it would give you the name of the traveler." J.A. 914.

CEATS correctly notes this testimony alone cannot show that the Expedia 2.0 system contained the claimed functionality. However, the test specification and the usability study videos (which predate Expedia 2.0's release) coupled with the testing checklist (which postdates the release) sufficiently corroborate the proffered testimony.

The test specification was created on December 13th, 1996 by Mr. Broas. It was last updated on March 19, 1997. The specification explains the functioning of the Expedia 2.0 system. It states the Expedia 2.0 system would contain a seat map, and that the seat map would function as follows:

> Positioning the cursor over an available seat will display the seat number in "bubble-text." If the seat has been marked then the text will also contain the passenger's name. [If the user changes the seat selection], the bubble-text should be updated appropriately.

J.A. 9333.

The usability study videos, in turn, show the implementation and testing of the Expedia 2.0 system. In January and March 1997, Microsoft conducted multiple usability studies of Expedia 2.0. The videos showed users hovering a mouse cursor over a seat and obtaining a pop-up box listing the seat number and its availability.

The testing checklist post-dates Expedia 2.0's public release by almost two months. Titled "Seat Map & Seat Selection Test Cases," the testing checklist required testers to verify certain levels of functionality in the system. These included:

- "that the Seat Map page comes up . . . after clicking 'Continue' on the Seat Preference Page;"

- "location of available/unavailable seats;"

- "that positioning the cursor over an unoccupied seat will display the correct seat number in 'bubble-text';"

- "that positioning the cursor over an occupied seat will display the correct seat number along with the appropriate passenger's name;" and

- that "the seat becomes occupied" and "that the number of the occupied seat is now assigned to the selected passenger" when an unoccupied seat is clicked.

J.A. 9327–28.

CEATS argues this evidence cannot corroborate Broas' and Lubetkin's testimony because they are improper "memory aids." *See The Barbed Wire Patent*, 143 U.S. at 284 (noting the danger of prodding witnesses' memories). Particularly, it challenges the videos as aiding Lubetkin "in incorrectly recalling the details of the public May 1997 system." Appellant's Br. 32.

Contrary to CEATS' assertion, "[d]ocumentary or physical evidence that is made contemporaneously with the inventive process provides the most reliable proof that the inventor's testimony has been corroborated," because such evidence eliminates "the risk of litigation inspired fabrication or exaggeration." *Sandt Tech., Ltd. v. Resco Metal and Plastics Corp.*, 264 F.3d 1344, 1350–51 (Fed. Cir. 2001). The videos, the test specification, and the

testing checklist are all contemporaneous pieces of evidence from the relevant inventive time period: January 1997 to August 1997. As such, they are "the most reliable proof" for corroborating the testimony given at trial. *Id.*

Here, the defendants presented testimony that the public Expedia 2.0 system contained the claimed functionality and thus anticipated the asserted claims. The test specification corroborates this testimony because it shows that Microsoft intended to create a system with the claimed functionality. The usability study videos corroborate the testimony because they show that Microsoft actually created a system with the claimed functionality. The post-release testing checklist corroborates the testimony because it shows Microsoft was testing for the claimed functionality shortly after the public release. While CEATS raises several arguments against finding corroboration, this court is not persuaded. Corroboration is a "rule of reason," *Woodland Trust*, 148 F.3d at 1371, and this court finds a jury could reasonably rely on the proffered physical evidence to corroborate the testimony of Messrs. Broas and Lubetkin.

Based on its argument that the evidence presented is not sufficiently corroborated, CEATS argues the jury did not have sufficient evidence to find anticipation of four claim elements: (1) mouse over; (2) database; (3) receive; and (4) add. To the contrary, this court's discussion above shows that the record sufficiently provides evidence that the Expedia 2.0 system contained the mouse over functionality. The evidence also discloses the other elements.

Claim 8 of the '866 patent, which is representative of all the asserted claims for this purpose, requires "a database storing a plurality of entries denoting seat availability of a venue." '866 patent, col. 8, ll. 8–9. Mr. Broas testified that the Expedia 2.0 system used a database. Mr. Lubetkin testified in detail about the Expedia 2.0 database, including the information contained within, the

information returned in response to a request, what would happen if the user sent a request for something that was not in the database, and how the database communicates with Expedia's servers and with the end user.

The patent claims also require that the system "receiv[e] from the end user a selection of [a] specific individual seat." *See* '361 patent, col. 7, ll. 29–30. The videos and the test specification show that a user could select a seat and the system would update to reflect that selection. The record also supplies testimony to confirm these points. Mr. Broas testified that the Expedia 2.0 system received the user's choice of seats through the seat map. Mr. Lubetkin testified that Expedia 2.0 provided seat availability information that allowed the user to select a seat, and that the seat map was updated when the server received the user's choice of seats.

Claim 8 of the '866 patent requires that the server "add the specific individual seat to a list of selected seats to be displayed in response to the selection." '866 patent, col. 8, ll. 24–25. Claim 1 of the '361 patent has a similar requirement. *See* '361 patent, col. 7, ll. 31–32. Both the test specification and the usability study videos showed users adding individual seats to a list of selected seats.

The defendants' expert also testified regarding each of these elements. He identified each element in the Expedia 2.0 system and concluded that the system anticipated the asserted claims. Based on this testimony and the evidence in the record, a reasonable jury could have found these limitations present in the Expedia 2.0 system. CEATS has not identified sufficient justification to disturb the jury's conclusion on this point.

B.

CEATS argues that, even if the Expedia 2.0 system functioned as testified, the record lacks evidence that this

prior art included the "sets of seats" limitation in the '869 patent. As noted above, the '869 patent requires mouse over functionality relating to "sets of available individual seats." '869 patent, col. 6, ll. 44–45. CEATS points out that while the prior art may have allowed "separately selecting three distinct individual seats for three separate passengers," this "does not satisfy the numerous claim limitations regarding a 'set of available individual seats.'" Appellant's Br. 61–62. It states the seat map must "display additional information about a set of seats, not a single seat, when a user places his mouse indicator over a set of seats, not a single seat." *Id.* at 62.

At trial, CEATS' argued that "set" needed no construction; the jury would understand its meaning. J.A. 9694. Thus, the question is whether the jury had sufficient evidence to find that in this context, the term "set" could include a single seat, thus rendering it anticipated by the Expedia 2.0 system.

The '869 patent itself resolves this question. Figure 4B shows a seat map of a dinner theater. In CEATS' view, each table is a set or section with multiple individual seats which can be selected from the set. The patent labels the tables as "S" followed by a number, such as S54. J.A. 113. Unavailable individual seats are shown as crossed out. *Id.* Some sets of seats, for example S62, contain as many as ten seats per set. *Id.* Some smaller booths, such as S55, are also labeled as sets and contain four seats. Opposite the stage is a bar with 17 seats. Each seat is labeled as its own set, S100 through S117. *Id.* The figure shows each individual seat at the bar as a single set. *Id.* Based on this evidence, the jury could reasonably find that a "set" could be comprised entirely of a single individual seat.

This court considers and rejects CEATS' remaining arguments on anticipation. Sufficient evidence supports

the jury's verdict, and this court affirms the denial of CEATS' motion for judgment as a matter of law.

IV.

CEATS seeks a new trial because the district court allegedly erroneously instructed the jury on anticipation by prior invention. The record shows that CEATS timely objected to the instruction. However, CEATS has not shown that the jury instruction as a whole was erroneous or that it was prejudiced through any alleged error.

This court reviews jury instructions in their entirety and only orders a new trial when errors in the instructions as a whole clearly mislead the jury. *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006) (en banc in relevant part) (internal citations and quotations omitted). "In reviewing jury instructions, the full trial record and the jury instructions in their entirety must be examined because instructions take on meaning from the context of what happened at trial, including how the parties tried the case and their arguments to the jury." *Therasense, Inc. v. Becton Dickinson & Co.*, 593 F.3d 1325, 1331 (Fed. Cir. 2010) (en banc).

CEATS contends that part of the jury instruction regarding prior invention under former 35 U.S.C. § 102(g)(2) was incorrect because it did not explicitly state that an alleged prior inventor must make the alleged invention public after conception and reduction to practice. In other words, the jury was allowed to find the patent anticipated on the basis of "secret prior art." Appellant's Br. 67. CEATS states the district court's instruction "permitted the jury to invalidate the claims for anticipation by prior invention without finding that the prior inventor did not abandon, suppress, or conceal the invention. Accordingly, it was contrary to law." *Id.* at 70.

The instruction as a whole does not evince error. The court's general instructions concerning invalidity made clear that the only prior art relevant to the case were prior publications, prior public uses, prior art triggering the on-sale bar, and "[a]nything that was made in this country by another before the inventor made the invention, and has not subsequently been abandoned suppressed, or concealed." J.A. 485–86. With respect to former § 102(g), the district court explained that a prior invention can anticipate "if the claimed invention was already made by someone else in the United States before May 1998," and repeated that the other person must not have "conceal[ed] the invention, suppress[ed] it, or ke[pt] it secret." J.A. 491–92.

The court then correctly instructed the jury to determine the identity of the first inventor in case of a dispute: "the person who first conceived of the claimed invention and first reduced it to practice is the first inventor; if one person conceived of the claimed invention first, but reduced it to practice second, that person is the first inventor only if that person (a) began to reduce the claimed invention to practice before the other party conceived of it and (b) continued to work with reasonable diligence to reduce it to practice from a time just before the other party's conception." *Id.* The district court therefore twice made clear that a prior invention that was abandoned, suppressed, or concealed could not anticipate.

Even if the instructions were not the model of clarity, any error is harmless. *See NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1312 (Fed. Cir. 2005). As discussed above, the full record shows the defendants' anticipation case was based on the publicly released Expedia 2.0 system. The jury instruction concerning public use, which CEATS does not challenge, allowed the jury to find anticipation based on the features of Expedia 2.0 as it was released to the public. Any alleged error regarding an instruction on prior invention does not reach

the basis for the jury's finding: public use.  Therefore, this court affirms the denial of CEATS' motion for a new trial.

## V.

This court affirms the decision of the trial court because substantial, corroborated evidence supports the jury's verdict and because there was no error in the jury instructions.  Because this court affirms, there is no need to reach the alternative grounds for affirmance raised by defendant AirTran.

**AFFIRMED**

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CEATS, INC.,**
*Plaintiff-Appellant,*

**v.**

**CONTINENTAL AIRLINES, INC., ALASKA AIRLINES, INC., HORIZON AIR INDUSTRIES, INC., DELTA AIR LINES, INC., JETBLUE AIRWAYS CORPORATION, UNITED AIRLINES, INC., VIRGIN AMERICA, INC., US AIRWAYS, INC., TICKETMASTER, LLC, TICKETSNOW.COM, INC., AND LIVE NATION WORLDWIDE, INC.,**
*Defendants-Appellees,*

AND

**AIRTRAN AIRWAYS, INC.,**
*Defendant-Appellee.*

---

2012-1614

---

Appeal from the United States District Court for the Eastern District of Texas in No. 10-CV-0120, Chief Judge Leonard Davis.

SCHALL, *Circuit Judge,* concurring-in-part and dissenting-
in-part.

I join the court's opinion except for the analysis in
Part III.B, relating to the "sets of seats" limitations in
claim 5 of the '869 patent. In my view, the record does not
contain sufficient evidence for a reasonable jury to find
those limitations satisfied by Expedia 2.0. I therefore
would reverse the denial of CEATS's motion for judgment
as a matter of law of non-invalidity of that claim, and
would remand for a determination of damages for in-
fringement. Accordingly, I respectfully concur-in-part and
dissent-in-part.

After noting that CEATS took the position that "set"
needed no construction, the majority frames the issue as
follows: "[T]he question is whether the jury had sufficient
evidence to find that in this context, the term 'set' could
include a single seat, thus rendering it anticipated by the
Expedia 2.0 system." Majority Op. at 12. I believe that
"set" cannot reasonably be construed to include or consist
of an individual seat because neither the specification of
the '869 patent nor the dictionary definition of that term
supports such an interpretation.

To support its view that "sets of seats" could be com-
prised entirely of a single individual seat, the court high-
lights barstools S100 through S117 in Figure 4B of the
'869 patent. Majority Op. at 12. Specifically, the court
views the "S" in the identifying letter-number strings as
an abbreviation of "<u>S</u>et" as that term is used in claim 5.
*Id.* ("The figure shows each individual seat at the bar as a
single set.") However, in Figure 4B, tables in a shaded
region in the center of the theater are identified with a
"P," followed by a number, while tables outside of the
shaded area are identified with an "S," followed by a
number. The legend near the top of Figure 4B makes
clear that the "P" and "S" in the identifier strings stand
for "<u>P</u>remium Seating" and "<u>S</u>tandard Seating." In other

words, "S" in Figure 4B does not stand for "Set" but rather "Standard Seating." Thus, the "S" at each of the eighteen numbered barstools simply means that each stool is standard rather than premium seating. Further, the corresponding written description does not address the barstools or identify those individual seats as "sets." *See* '869 patent, col. 5, l. 55 – col. 6, l. 16. For these reasons, I do not believe Figure 4B supports the proposition that the patentees acted as their own lexicographers to broaden the ordinary meaning of "set" to include individual seats.

In its claim construction opinion, the district court addressed whether "sets of seats" could be limited to individual seats. *See CEATS, Inc. v. Cont'l Airlines*, No. 6:10-cv-120, 2011 WL 2971243 (E.D. Tex. July 21, 2011). Although the district court did not construe the various related disputed phrases, the court made clear that it "does not adopt Defendants' proposed limitations that would limit sets of seats to individual seats." *Id.* at *3–4. Because, as discussed above, the specification does not broaden the ordinary meaning of "sets of seats" to include individual seats, when assessing CEATS's motion, rather than finding that "sets of seats" should not be *limited* to individual seats, the district court should have relied on a dictionary meaning to find that no reasonable construction of "sets" could *include* individual seats. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 n.6 (Fed. Cir. 1996) ("Judges are free to consult such resources [*i.e.*, technical treatises and dictionaries] at any time in order to better understand the underlying technology and may also rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents."). The word "set" in this context means a "collection or group" of things. *See* The Oxford American Dictionary and Language Guide 921 (1999).

While a "set[] of available individual seats" might have only one *available* seat in it, based on the word's

ordinary meaning, a "set" must have two or more seats or it is not actually a "set," i.e., a collection or group. Here, the defendants did not contend, and the record does not support, that Expedia 2.0 provided information about a grouping of *two or more* seats.[*] Because no reasonable jury could find claim 5 invalid when applying the evidence to a reasonable construction of the "sets of seats" limitations, I would reverse the denial of judgment as a matter of law and would remand for a determination of damages for infringement of claim 5.

---

[*] For example, a user of Expedia 2.0 could not mouse over a row on the seat map of an aircraft—which includes, for sake of example, seven seats—and receive information about how many of those seats are, in fact, available.